STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
MARCEL VICK, DEFENDANT–APPELLANT.

Argued September 26, 1989—Decided November 30, 1989.

*Randall W. Westreich,* Designated Counsel, argued the cause for appellant (*Alfred A. Slocum,* Public Defender, attorney).

*Lisa Sarnoff Gochman,* Deputy Attorney General, argued the cause for respondent (*Peter N. Perretti, Jr.,* Attorney General of New Jersey, attorney).

PER CURIAM.

This is a pesky case that strains judicial tolerance. The case would undoubtedly not have arisen had it not preceded our decision in *State v. Ingram,* 98 *N.J.* 489 (1985), which held that *Sandstrom v. Montana,* 442 *U.S.* 510, 99 *S. Ct.* 2450, 61 *L. Ed.* 2d 39 (1979), requires the State to prove beyond a reasonable doubt all elements of its handgun control offense, *N.J.S.A.* 2C:39–5b, including the absence of a permit. The question will probably never arise again after *Ingram.* The case is before us on an appeal as of right because of a dissent in the Appellate Division. The single issue that divided the panel is whether the concededly erroneous instruction of the trial court with respect to the State's burden to prove the absence of a gun permit should be regarded as harmless error in what the majority below characterized as the "peculiar circumstances" of this case.

Everyone agrees that erroneous instructions are almost invariably regarded as prejudicial. Such errors are "poor candidates for rehabilitation under the harmless error philosophy." *State v. Crisantos (Arriagas),* 102 *N.J.* 265, 273 (1986) (quoting *State v. Simon,* 79 *N.J.* 191, 206 (1979)). The disagreement, then, is not over legal principles, but over application of the principles to the facts of this case.

The defendant was a bystander who became involved in a tavern brawl. The responding police officer lost his service revolver in the fracas. After taking one suspect to the station house, the police officer returned to the tavern to claim his revolver. He suspected that defendant, who had intervened in the brawl, might have it in his possession. He patted down the defendant, discovered the weapon, and arrested defendant for the theft of his service revolver.

The State indicted defendant for resisting arrest (in connection with the earlier fracas), second-degree robbery (the revolver), and possession of a firearm without a permit (the officer's service revolver). The jury convicted the defendant only of the illegal possession charge. The point on appeal here is that the trial court refused defense counsel's request to charge the jury that the State bore the burden of proving that the gun was unlicensed. The court instructed the jury that the State had the burden of proving only that the instrument was a handgun and that Vick possessed the handgun knowingly. Counsel objected to the comments of the court concerning the lack of evidence that Vick had a permit, and the court responded that absent defendant's showing that he had a permit, the State had no burden to prove the absence of a permit.

As noted, the case was tried before publication of our opinion in *State v. Ingram, supra,* 98 *N.J.* at 494–95, which held that the absence of a permit was an essential element of the offense.

On appeal, the Appellate Division, in an unpublished opinion, recognized that failure to charge with respect to the State's burden of proof on an essential element of a crime would be presumed to be reversible error. However, it found the error to be harmless beyond a reasonable doubt because the theory of the defense was that without any criminal intent, Vick had merely held the gun in safekeeping, intending to return it to the officer. The court concluded: "The distinctive fact is that the absence of a permit was inherent in the defense. Based upon the defense offered at trial, defendant could not possibly have

had a permit for the weapon." Consequently, it ruled that none of the defendant's rights could have been compromised. The dissenting member of the panel concluded that "when the constitutional deprivation consists of a directed verdict, preservation of the integrity of the right to trial by jury requires reversal" (quoting *State v. Ragland*, 105 *N.J.* 189, 196 (1986)). *Cf. State v. Collier*, 90 *N.J.* 117, 123 (1982) (directed verdict, affirmative finding that error was harmful). We disagree that this was a directed verdict in the same sense as in *State v. Collier*, in which the court actually directed the jury to find the defendant guilty. Rather, here we have a case in which the court erroneously failed to charge the jury with respect to the State's burden concerning one essential element of the offense.

We realize that it is difficult to explain why juries should be required to make a finding of what seems to be the obvious. The short answer is that there is simply no substitute for a jury verdict. The long answer is that the defense posed in this case did not inescapably posit guilt of the offense. Recall that in *State v. Collier, supra,* 90 *N.J.* 117, defendant had candidly admitted to having sexual relations with a minor child, contending only that it was consensual. Here the defendant consistently denied that the underlying possessory act was criminal. The defendant contested the quality of his possession as being within the scope of the regulatory act in that his possession was not an exercise of dominion over the gun, but merely a custodial attempt to return it to its owner. An example will suffice. What if the bartender had picked up the gun and held on to it until the officer returned? Would a jury be entitled to conclude that the Legislature did not intend to penalize such possession? The defendant claims that his possession was like the bartender's in that situation. It may seem specious and illogical that the jury would acquit the defendant of the regulatory offense when his theory of defense is that he possessed the weapon, but it is no more illogical than that a jury might acquit of statutory rape one who has asserted the defense of consent. *See State v. Collier, supra,* 90 *N.J.* 117.

We recently revisited the issue in *State v. Crisantos (Arriagas), supra:*

> In general, it is speculative to forecast what verdict a jury would have returned if properly instructed on the basis of the verdict that a jury returned after an incomplete instruction. *State v. Grunow, supra,* 102 *N.J.* [133] at 148 We have cautioned that "[a]ppropriate proper charges to a jury are essential for a fair trial," *State v. Collier,* 90 *N.J.* 117, 122 (1982) (quoting *State v. Green,* 86 *N.J.* 281, 287 (1981)), and erroneous instructions on material issues are presumed to be reversible error, excusable only if they are harmless beyond a reasonable doubt. *Id.* [90 *N.J.*] at 122–23. Such errors are "poor candidates for rehabilitation under the harmless error philosophy." *State v. Simon, supra,* 79 *N.J.* at 206. [102 *N.J.* at 273.]

And on that score our review of harmless error is tempered by our long-standing recognition of the critical role accorded the jury. We have noted that the jury serves as "the embodiment of the common sense and feelings reflective of society as a whole." *Id.* at 272 (quoting *State v. Ingenito,* 87 *N.J.* 204, 212 (1981)). Thus, a court may never direct a verdict of guilt. *Crisantos, supra,* 102 *N.J.* at 272 (citing *United Brotherhood of Carpenters & Joiners of Am. v. United States,* 330 *U.S.* 395, 408, 67 *S.Ct.* 775, 782, 91 *L.Ed.* 973, 985 (1947)). And even the submission of special jury findings in criminal cases is prejudicial error when special findings may inhibit the jury's ability to "look at more than logic." *Crisantos, supra,* 102 *N.J.* at 272 (citing *United States v. Spock,* 416 *F.*2d 165, 180–83 (1st Cir.1969)).

We do not like the result any more than do our dissenting members. It seems such a waste for a system, so overloaded with criminal trials, to have to retry this case. But we are unable to distinguish the matter in principle from others in which a defense might require admission of essential elements of an offense. For example, a defendant who asserts a shooting in self-defense posits that he or she knowingly or purposely killed to avert mortal injury. *N.J.S.A.* 2C:3–4b(2). Would we ever conclude that a court could refuse a defendant's request to charge the elements of murder, knowingly or purposefully causing death or serious bodily injury resulting in death, because the defendant had admitted them? We think not. We

share the dissent's intuition that this case is a far cry from murder. But we see no way to conclude that a trial can be constitutionally fair when the State is not required to prove, over the defendant's objection, the essential elements of the offense charged. The requirement is so basic and so fundamental that it admits of no exception no matter how inconsequential the circumstances.

The judgment of the Appellate Division is reversed, and the matter is remanded to the Law Division for further proceedings consistent with this opinion.

CLIFFORD and STEIN, JJ., dissenting.

Police officers are dispatched to a local watering hole to quell a ruckus. Defendant, assuming the role of peacemaker, attempts to "cool" it. He does not do so well, because a fight breaks out as police attempt to arrest one Johnson. In the succeeding melee one of the officers is knocked down. He loses his revolver, which somehow finds its way into defendant's possession. After the malefactors have been hauled off to the pokey and some semblance of peace restored, the officer, now awakened to the fact that his weapon is missing, returns to the saloon. Told that defendant has his gun, the officer pats him down and, lo and behold, discovers his loaded weapon in defendant's trousers.

In due course defendant is charged with, among other things, possession of a handgun without a permit, in violation of *N.J.S.A.* 2C:39–5(b). The theory of the State's case is that defendant stole the officer's weapon. Defendant argues that he had no intention of keeping the weapon and in fact was on his way to return it to the officer. Because he admits that the weapon belonged to the officer, defendant could not possibly have had a permit to carry it. That conclusion was not just consistent with the defense, it was part and parcel of it—a necessary ingredient. Nothing in the case focused on a permit or the lack of it, and defendant left no room for any claim that

he had a permit. The case was about possession—whether defendant's possession of someone else's handgun was "fleeting or shadowy" and accompanied by the avowed purpose of returning it to the person who had lost it. The jury decided not.

We agree with the majority below that because the absence of a permit is "an essential element of the offense of unlawful possession of a handgun[,] * * * [t]he jury should have been apprised of the permissible inference, authorized by *N.J.S.A.* 2C:39–2, that no permit had been obtained, but that the ultimate burden of establishing its absence was to be borne by the prosecution." As well, we agree that the failure of the trial court to have delivered that instruction would ordinarily call for reversal of defendant's conviction, but that the peculiar facts of this case warrant an exception to the ordinarily-hard-and-fast rule. We therefore adopt the view of the majority below that the error was harmless beyond a reasonable doubt and that "it is plain beyond peradventure that defendant was in no sense prejudiced," nor could any of his substantial rights possibly have been compromised by the trial court's mistake. Noteworthy is the fact that the dissenter below agreed entirely with the views of his colleagues in the majority, but felt constrained to reverse because of what he perceived to be precedent from this Court that would prohibit characterizing the acknowledged error as "harmless."

We find ourselves at a loss to understand the Court's concern for this defendant, who complains of the trial court's failure to have charged the jury on the State's obligation to *prove* that he did not have the permit that defendant himself *insists* he did not have—nor could he have had, inasmuch as the handgun concededly belonged to the police officer, to whom defendant wished (he says) to return it, and thus only the officer was authorized to carry it. See *N.J.S.A.* 2C:58–4. We should all recognize that our cases may occasionally turn up freakish factual contexts in which the rigid, mechanistic application of a sound, well-established, respected principle of law will produce

a result that is plainly at odds with substantial justice. This is such a case. When, as here, there is a collision between law and common sense, this Court should exert its best effort to vindicate good sense. Our institutional legitimacy depends on our succeeding in that endeavor.

We would affirm defendant's conviction rather than expend time, energy, and valuable resources on a retrial, when the first trial was so eminently fair.

*For reversal and remandment*—Chief Justice WILENTZ, and Justices HANDLER, POLLOCK, O'HERN and GARIBALDI—5.

*For affirmance*—Justices CLIFFORD and STEIN—2.