858 A.2d 1126
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v. RICHARD HODDE, DEFENDANT-APPELLANT.

Argued March 2, 2004—Decided September 27, 2004.

Kevin G. Byrnes, Designated Counsel, argued the cause for appellant (Yvonne Smith Segars, Public Defender, attorney).

Russell J. Curley, Deputy Attorney General, argued the cause for respondent (Peter C. Harvey, Attorney General of New Jersey, attorney).

Justice ZAZZALI delivered the opinion of the Court.

Defendant Richard Hodde was convicted of receiving stolen property, in violation of *N.J.S.A.* 2C:20–7a and *N.J.S.A.* 2C:20–2b(2)(b). This case presents us with the question of whether a defendant may be convicted under those statutes when the property, in fact, is not proven to be stolen. Because we determine that the relevant statutory language requires the State to prove that

the property has been stolen, we reverse the judgment of the Appellate Division and remand for a new trial.

## I.

As adduced at trial, the facts are as follows. On the morning of September 18, 1999, employees of a Penske Truck leasing facility in Pottsville, Pennsylvania noticed a truck missing from the lot. Suspecting that the truck had been stolen, they contacted the police and provided a description of the vehicle. The police in Pennsylvania, in turn, prepared an "all police broadcast" that the New Jersey State Police subsequently received by Teletype on the evening of September 20, 1999.

After receiving that information, Troopers Jarrett Beatrice and Brett Warne traveled to a truck stop just off of Route 78 in Hunterdon County in search of the vehicle. After arriving, the officers noticed that, although trucks are usually backed into the parking spaces, a truck matching the description of the stolen vehicle had been pulled in headfirst. The vehicle also stood out because it had no trailer attached. A computer check of the license plate confirmed that it was the vehicle reported stolen in Pennsylvania.

Trooper Beatrice climbed onto the front end over the engine and saw defendant in a sleeping bag in the rear compartment of the cab. Trooper Warne also saw pants draped over the driver-side seat. The troopers attempted to wake defendant for five to ten minutes by shouting, knocking on the windows, and shaking the cab. Unsuccessful in their efforts, they walked back to their vehicle to contact their sergeant for guidance. After doing so, they returned to the tractor when Beatrice saw the passenger-side door open and defendant exit the cab. Because Beatrice could not see defendant's right hand, he ordered him to show his hands. The troopers then handcuffed and arrested defendant.

Defendant asked why he was being placed under arrest. The troopers informed him that the tractor had been reported stolen in Pennsylvania. According to the troopers, defendant attempted to

explain that the truck was simply "overdue" as a result of a fight he had had with his boss and that, consequently, the stolen-vehicle report "was just a big misunderstanding." Although defendant did not have any keys in his possession, the troopers found a set of keys in the ignition. The troopers observed no evidence of forced entry into the tractor nor did they find any tools or objects indicating that defendant had broken into the vehicle. Defendant possessed a Pennsylvania commercial truck driver's license, but the troopers did not observe defendant drive the tractor.

A Hunterdon County grand jury indicted defendant on one count of third-degree theft by receiving stolen property, contrary to *N.J.S.A.* 2C:20-7a, and, because a motor vehicle was involved, *N.J.S.A.* 2C:20-2b(2)(b). After defendant pled not guilty, the case proceeded to trial.

In addition to the testimony of Troopers Beatrice and Warne, the State presented the manager of the truck-leasing facility, Elwin Beadle, as a witness. Beadle testified that the truck and five others were leased to the Phillip VanHeusen Company (Van-Heusen). VanHeusen hires its own drivers, who access the trucks directly from the Penske lot. Beadle explained that in order to prevent the drivers from inadvertently locking themselves out of the truck, each driver keeps a key on his person while another key remains in the ignition of each tractor, even when it is parked at the Penske facility. Beadle and other Penske employees are familiar with VanHeusen's drivers because of regular contact with them. Beadle did not recognize defendant as one of the VanHeusen drivers and testified that he had never seen defendant before.

Beadle also testified that after recovering the tractor involved in this case, he noticed that it had been driven 1,200 miles since it was last logged in. He said that a small vent-window on the passenger-side door had been damaged. Based on his prior experience involving break-ins with Penske trucks in New York City, he believed that access to the tractor was gained through that opening.

Defendant did not testify at trial. It appears that his strategy was to cast doubt on whether the tractor was stolen. The trial court instructed the jurors that they need only find that defendant believed the vehicle was stolen or probably had been stolen. After receiving that charge, the jury convicted defendant. After conviction, the State moved for an extended sentence. The trial court granted that motion and sentenced defendant to a seven-year prison term and imposed applicable fines.

Defendant appealed, arguing for the first time that the trial court erred in instructing the jury that the State did not have to prove that the truck actually had been stolen. The Appellate Division affirmed, finding no plain error in the trial court's jury charge on receiving stolen property and rejecting his remaining claims of error. We granted certification, 178 *N.J.* 28, 834 *A.*2d 402 (2003), and now reverse.

II.

Our analysis of whether *N.J.S.A.* 2C:20–7a requires that the property actually be stolen begins with the fundamental premise that criminal laws are to be strictly construed. *State v. Valentin,* 105 *N.J.* 14, 17, 519 *A.*2d 322 (1987). With that as our cynosure, we apply the familiar canons of statutory construction. We first inquire whether the statute admits of a plain-meaning interpretation. *Burns v. Belafsky,* 166 *N.J.* 466, 473, 766 *A.*2d 1095 (2001). When "the statutory language is clear and unambiguous, and susceptible to only one interpretation, courts should apply the statute as written without resort to extrinsic interpretative aids." *In re Passaic County Utils. Auth.,* 164 *N.J.* 270, 299, 753 *A.*2d 661 (2000). Statutory provisions, however, cannot be read in isolation. *Matturri v. Bd. of Trs. of Jud. Ret. Sys.,* 173 *N.J.* 368, 383–84, 802 *A.*2d 496 (2002). They must be construed in concert with other legislative pronouncements on the same subject matter so as to give full effect to each constituent part of an overall legislative scheme. *Ibid.* If two interpretations of the language are plausible, we must effectuate the legislative intent by

resorting to extrinsic evidence. *Burns, supra,* 166 *N.J.* at 473, 766 *A.*2d 1095.

■ With those principles to guide us, we turn to *N.J.S.A.* 2C:20–7a, which provides:

Receiving stolen property.

a. Receiving. A person is guilty of theft if he knowingly receives or brings into this State movable property of another knowing that it has been stolen, or *believing that it is probably stolen.* It is an affirmative defense that the property was received with purpose to restore it to the owner. Receiving means acquiring possession, control or title, or lending on the security of the property.

[ (Emphasis added).]

Although the highlighted language suggests that belief alone will suffice and that the property need not actually be stolen, those are not the Legislature's only words on the subject. The Code of Criminal Justice (Code) organizes all provisions concerning "Theft and Related Offenses" into a single Chapter, *N.J.S.A.* 2C:20–1 to – 37. A common set of definitions applies to those offenses, *N.J.S.A.* 2C:20–1, and they are graded collectively in *N.J.S.A.* 2C:20–2. Revealingly, *N.J.S.A.* 2C:20–2b(2)(b) states that "[t]heft constitutes a crime of the third degree if ... [t]he *property stolen* is a firearm, motor vehicle, vessel, boat, horse, domestic companion animal or airplane[.]" (Emphasis added). Therefore, putting aside whether *N.J.S.A.* 2C:20–7a read in isolation would require the property involved be stolen in fact when a defendant acquires possession of it, *N.J.S.A.* 2C:20–2b(2)(b) expressly requires that the property be stolen.

We realize that *N.J.S.A.* 2C:20–2 comprises the applicable grading provisions, but we have expressly recognized that such provisions can contain facts that the State must prove to warrant a conviction. For instance, in *State v. Federico,* 103 *N.J.* 169, 173–77, 510 *A.*2d 1147 (1986), we held that in a prosecution for kidnapping under *N.J.S.A.* 2C:13–1, the fact that "the actor releases the victim unharmed," *N.J.S.A.* 2C:13–1c, which down-grades a kidnapping offense from first- to second-degree, is an element of that offense despite its inclusion in the "grading" subsection of *N.J.S.A.* 2C:13–1. *See also State v. Damiano,* 322 *N.J.Super.* 22,

51–52, 730 *A*.2d 376 (App.Div.1999) (holding that in aggregating amounts of thefts for grading under *N.J.S.A.* 2C:20–2b(4), element of offense is whether thefts were part of ."a single scheme or course of conduct" that could be aggregated), *certif. denied,* 163 *N.J.* 396, 749 *A*.2d 369 (2000); *State v. Smith,* 279 *N.J.Super.* 131, 139–42, 652 *A*.2d 241 (App.Div.1995) (applying *Federico* to hold that, under revised version of kidnapping statute, factors included in grading provision constitute elements of offense). We find it similarly appropriate in these circumstances to take into account information the Legislature has provided in the applicable grading provision.

Furthermore, viewing the grading provisions more broadly, and in conjunction with *N.J.S.A.* 2C:20–7, leads us to conclude that whenever the State seeks a conviction for the crime of receiving stolen property, it must prove that the property in question was actually stolen. To hold otherwise, as will be seen, would lead to illogical results.

*N.J.S.A.* 2C:20–2b(2) provides:

(2) Theft constitutes a crime of the third degree if:

(a) The amount involved exceeds $500.00 but is less than $75,000.00;

(b) *The property stolen* is a firearm, motor vehicle, vessel, boat, horse, domestic companion animal or airplane;

(c) *The property stolen* is a controlled dangerous substance or controlled substance analog as defined in *N.J.S.* 2C:35–2 and the amount involved is less than $75,000.00 or is undetermined and the quantity is one kilogram or less;

(d) It is from the person of the victim;

(e) It is in breach of an obligation by a person in his capacity as a fiduciary;

(f) It is by threat not amounting to extortion;

(g) It is of a public record, writing or instrument kept, filed or deposited according to law with or in the keeping of any public office or public servant;

(h) *The property stolen* is a person's benefits under federal or State law, or from any other source, which the Department of Human Services or an agency acting on its behalf has budgeted for the person's health care and the amount involved is less than $75,000;

(i) *The property stolen* is any real or personal property related to, necessary for, or derived from research, regardless of value, including, but not limited to, any sample, specimens and components thereof, research subject, including any warm-blooded or cold-blooded animals being used for research or intended for use in

research, supplies, records, data or test results, prototypes or equipment, as well as any proprietary information or other type of information related to research; (j) *The property stolen* is a New Jersey Prescription Blank as referred to in R.S.45:14–14; or

(k) *The property stolen* consists of an access device or a defaced access device. [ (Emphases added).]

The statute establishes those thefts that constitute third-degree crimes. It begins with a catchall category providing that all thefts exceeding $500.00 but less that $75,000.00 are third-degree crimes. The Legislature specified in subparagraphs (b) through (k) a litany of those objects for which the State does not have to establish a value to prove the crime of third-degree theft. When identifying those objects, however, the statute repeatedly refers to "the property stolen." Nothing in the text or legislative history indicates that the Legislature intended to allow the state to convict on mere *belief* that the enumerated items had been stolen. Instead, we determine that by repeatedly employing the phrase, "the property stolen," the Legislature evinced an intent that a person only could be found guilty of receiving stolen property if the property was *actually* stolen.

We recognize the appeal of a "plain language" argument, which would find that where the Legislature referred to "the property stolen" in the grading provisions, the State must prove the property to be stolen. Conversely, that argument would not require the property to be stolen when the statute is silent on the subject. But we find nothing to suggest that the Legislature intended to create two classes of property for purposes of the theft statute. Rather, we assume that the Legislature acted logically to create a coherent scheme that would be practical in its application. That purpose would be undermined if the State was required to prove that a horse was actually stolen, *N.J.S.A.* 2C:20–2b(2)(b), but that a cow was only believed to have been stolen. Such distinctions would create confusion among the bar, the bench, and the public, a result that the Legislature surely did not intend.

Quite apart from the above analysis, there are other canons of interpretation that aid our inquiry. Although we acknowledge

that the title of the statute is often not instructive, here it provides additional guidance. *See* N. Singer, 2A *Sutherland Statutory Construction* § 47.03 at 141 (5th ed.1992) (stating that title is properly considered to ascertain legislative intent and resolve doubts in meaning); *see also N.J. Const.* art. IV, § 7, ¶ 4 ("To avoid improper influences which may result from intermixing in one and the same act such things as have no proper relation to each other, every law shall embrace but one object, and that shall be expressed in the title."). The title, "Receiving *stolen* property" (emphasis added), makes plain that the law is concerned with property that has been the product of a theft.

An interpretation that requires the State to prove that the property actually is stolen also comports with common sense. If a person on the street or an attorney in a law office heard that a suspect is accused of receiving stolen goods, he or she would intuitively surmise that the goods were indeed stolen. To hold otherwise would breed cynicism and disdain for the law, while reinforcing the incorrect perception that jurisprudence is bottomed on casuistry and craft.

That is not to say that we should disregard the language in *N.J.S.A.* 2C:20-7 that speaks of the actor's knowledge that the property is, or belief that it probably is, stolen. We find, however, that that language refers to the scienter necessary for the crime. It does not address, much less dispense with, the requirement that the property itself possess the characteristic of being stolen.

In arriving at a different conclusion, the Appellate Division relied on *State v. Bujan,* 274 *N.J.Super.* 132, 133, 643 *A.*2d 628 (App.Div.1994), which held that property need not actually be stolen to sustain a conviction under *N.J.S.A.* 2C:20-7a. *Bujan* concerned a "sting" operation in which the State could not prove that the property had been stolen because the defendant, although believing the goods to be stolen, had arranged to purchase the property from police. *Supra,* 274 *N.J.Super.* at 133, 643 *A.*2d 628. Because the property—in that case, prescription drugs—had been lawfully entrusted to law-enforcement authorities, it was not actu-

ally stolen. *Ibid.* We appreciate the *Bujan* panel's sensitivity to such law-enforcement operations and their legitimate role in ensuring public safety but nevertheless conclude that when the State prosecutes a defendant for receipt of stolen property under *N.J.S.A.* 2C:20–7, it must prove that the property involved was actually stolen. We note only, in passing, that defendants involved in "sting" operations may still be guilty of attempt under *N.J.S.A.* 2C:5–1.

### III.

■ Having determined that the applicable statutes require the jury to be instructed that it must find that the property has been stolen, we have no choice but to conclude that the trial court's instruction amounted to plain error. We have stated repeatedly that accurate jury instructions are essential in a criminal trial. *E.g., State v. Vick,* 117 *N.J.* 288, 289, 566 *A.*2d 531 (1989). Accordingly, "the failure to charge the jury on an element of an offense is presumed to be prejudicial error, even in the absence of a request by defense counsel," *Federico, supra,* 103 *N.J.* at 176, 510 *A.*2d 1147, and "erroneous instructions are almost invariably regarded as prejudicial," *Vick, supra,* 117 *N.J.* at 289, 566 *A.*2d 531.

Here, the trial court not only failed to instruct the jury of the need to find that the truck had been stolen, it expressly informed the members that they need not do so. In pertinent part, the charge provided as follows:

Under [*N.J.S.A.* 2C:20–7] . . ., the State must prove three elements to establish that the defendant is guilty of receiving stolen property.

. . . .

One, that the defendant received or brought into this State movable property of another.

Two, that the defendant acted knowingly when he received or brought into the State the movable property of another.

And, three, that the defendant either kn[e]w that the property had been stolen or believed that it probably had been stolen at the time he received the property or brought the property into this State.

. . . .

I've already defined the term knowing to you in discussing the second element of the crime. I will no[t] repeat that here. *The State is not required to prove that the property, in fact, had been stolen.*

. . . .

Rather, [what] the State must prove is that the defendant either knew that the property was stolen or believed that it had probably been stolen.

[ (Emphasis added).]

Because the trial court did not advise the jury of the need to determine that the property was actually stolen, but instead instructed the jury that the State had no burden to prove that fact, the jury was misinformed about the elements of the crime. Therefore, defendant's conviction must be reversed and the matter remanded for a new trial.

## IV.

In view of our decision to reverse the conviction on the grounds stated above, we do not reach defendant's other claims of error. The judgment of the Appellate Division is reversed and the matter is remanded for a new trial.

*For reversal and remandment*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN and WALLACE—6.

*Opposed*—None.