964 A.2d 776

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. ANGELO A. GRENCI, JR., DEFENDANT–
APPELLANT.

Argued November 3, 2008—Decided February 24, 2009.

*Ruth Bove Carlucci,* Assistant Deputy Public Defender, argued the cause for appellant (*Yvonne Smith Segars,* Public Defender, attorney).

*Samuel J. Marzarella,* Senior Assistant Prosecutor, argued the cause for respondent (*Marlene Lynch Ford,* Ocean County Prosecutor, attorney; Mr. *Marzarella, Patricia S. Toreki and William Kyle Meighan,* Assistant Prosecutors, on the briefs).

*Leslie–Ann M. Justus,* Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (*Anne Milgram,* Attorney General, attorney).

*Angelo A. Grenci, Jr.,* submitted a supplemental brief, pro se.

Justice ALBIN delivered the opinion of the Court.

Defendant Angelo A. Grenci was tried and convicted by a jury *in absentia* on a superseding indictment alleging six counts of aggravated assault and one count of second-degree burglary. The initial indictment charged defendant only with second-degree burglary. Defendant absconded after his arraignment on the initial indictment but before he could be arraigned on the superseding indictment. Both the trial court and the Appellate Division found that defendant had waived his constitutional right to be present at his trial on the superseding indictment because he received notice of the trial date on the first indictment and because he had actual notice that the prosecutor intended to return to the grand jury to seek additional charges.

We now hold that defendant's trial *in absentia* on the superseding indictment did not comply with *Rule* 3:16(b). Because defendant was never arraigned on the superseding indictment and never waived—in writing or orally on the record—his right to be present at trial on that indictment, the trial should not have proceeded in his absence. *See R.* 3:16(b). Therefore, we conclude no conviction arising from any of the additional charges contained in the superseding indictment can stand.

We also reverse defendant's conviction on the burglary charge that was contained both in the original indictment and superseding indictment. We do so because the trial court's instructions to the jury directed a verdict on an element of the offense and thereby relieved the State of its constitutional burden of proving guilt beyond a reasonable doubt.

## I.

### A.

Defendant and co-defendants Henry Fallas and William Germann were each charged in one count of an Ocean County indictment with committing second-degree burglary, *N.J.S.A.* 2C:18–2.[1] The indictment arose from allegations that defendant and his co-defendants forced their way into an apartment where they engaged in a violent brawl. At a pretrial conference on April 28, 2003, defendant rejected a plea offer extended by the State. That same date, defendant signed a pretrial memorandum acknowledging that if he failed to appear on the trial date or any rescheduled trial date, the trial would proceed in his absence and that he would "be bound by the jury's verdict." The court scheduled a June 9, 2003 trial date.

On June 9, the court conducted a status conference instead of a trial. The court advised defendant in person that the trial was adjourned until July 28 and that the trial would proceed on that new date even if he failed to appear. At that same conference, the prosecutor told defense counsel that he intended to re-present the case to the grand jury and seek a superseding indictment that would include an additional count of aggravated assault.[2]

On June 11, the Ocean County grand jury returned a superseding indictment charging defendant with one count of second-degree burglary, *N.J.S.A.* 2C:18–2, three counts of second-degree aggravated assault, *N.J.S.A.* 2C:12–1(b)(1), and three counts of

---

[1] Two other defendants were charged in a second count with committing third-degree burglary, *N.J.S.A.* 2C:18–2.

[2] The conversation between the prosecutor and defense counsel was not on the record. The trial court made mention of that conversation when denying defendant's later motion for a new trial. Defendant does not dispute that he knew of the prosecutor's intention to re-present the case to the grand jury. He acknowledged in a brief to the trial court that, before the June 9 status conference, the prosecutor advised defense counsel that "he was considering returning to the Grand Jury for a superseding indictment."

third-degree aggravated assault, *N.J.S.A.* 2C:12–1(b)(2). Co-defendants Fallas and Germann were only charged in the burglary count of the superseding indictment.

Defense counsel forwarded a copy of the superseding indictment to defendant at his last known address, his parents' home, but had no further communication with defendant after the June 9 court conference. Defendant failed to appear at a July 21 pretrial conference, resulting in the issuance of a bench warrant for his arrest. On July 29, the trial on the superseding indictment began with only Fallas present. Neither defendant nor co-defendant Germann appeared during the three-day trial.

At the trial, the State presented testimony that, on the evening of August 10, 2002, defendant attended a party in Manchester Township. At that party, co-defendant Fallas got into a fight with Roy Piazza and knocked him unconscious. After defendant and his friends, including Fallas, left the party, Piazza recovered and then, apparently, wanted to go a second round with Fallas. Piazza went to Fallas's home, but did not find him there. He told Fallas's parents that he wanted to talk to their "scumbag" son and ended by saying, "I'll be home." Piazza, accompanied by his friends, then retired to his second-floor apartment in nearby Berkeley Township.

The news of Piazza's visit to Fallas's home was quickly transmitted to defendant, who was driving to Atlantic City with a group of friends. Apparently enraged, defendant changed directions and headed to Piazza's residence. Defendant and his friends entered Piazza's apartment building through an open door on the ground floor and climbed the stairs. Defendant knocked on the door to Piazza's apartment. Someone inside began to open the door, but immediately had second thoughts and tried to close it. Defendant and his friends pushed their way in and a melee ensued.

Defendant and Germann pursued Piazza into the kitchen where defendant picked up empty beer bottles and used them to strike Piazza's head and body. When Michael Ricciardella interceded to stop defendant's pummeling of Piazza, defendant turned on Ric-

ciardella, breaking a bottle over his head and biting him in the chest. In return, Ricciardella stuck his thumb in defendant's eye. At about this point Fallas yelled that the police were on their way, and the combatants poured out of the apartment. As defendant was leaving in his car, he observed Piazza in the parking lot and attempted to run him down—without success.

Defendant's counsel, in summation, argued that the violence in Piazza's apartment was a consensual fight, not a burglary. With regard to the burglary charge, the court instructed that

it's true with regard to [defendant and Germann] that they entered without license or privilege to be there. But there is some evidence here that Mr. Fallas may have—it could be inferred that he had license to be there or some type of implied or expressed invitation, whatever you may find from that testimony or evidence if you believe it to be true.

The jury convicted defendant of second-degree burglary, two counts of second-degree aggravated assault, and one count of simple assault—a lesser-included offense of aggravated assault—related to defendant's attempt to run down Piazza.[3] After the verdict, defendant was apprehended in Mexico and extradited to New Jersey.

Defendant moved for a new trial, arguing that the State could not try him *in absentia* on charges in an indictment on which he was never arraigned. The trial court denied that motion. While acknowledging that "technically there was no arraignment on the superseding indictment in the presence of the defendant," the court nevertheless found that defendant knew at the June 9 conference that the State intended to seek a new indictment that would include additional charges arising from the same events involving the burglary indictment.

The court sentenced defendant on the second-degree burglary conviction to an extended term of seventeen years in state prison and on the two second-degree aggravated assault convictions to seven-year terms, to run concurrently with each other but consec-

---

[3] Co-defendants Fallas and Germann were convicted of second-degree burglary.

utively to the burglary charge. On the simple assault conviction, defendant was sentenced to a six-month concurrent term. In all, defendant received a twenty-four-year-aggregate-term sentence subject to an eighty-five percent parole disqualifier under the No Early Release Act, *N.J.S.A.* 2C:43–7.2.

## B.

In an unpublished per curiam opinion, the Appellate Division affirmed the burglary and simple assault convictions and reversed the two aggravated assault convictions. The panel remanded for a new trial on the reversed convictions and for a new sentencing hearing on the burglary conviction.

First, the panel determined that defendant's trial on the superseding indictment violated neither *Rule* 3:16(b) nor principles of fundamental fairness. The panel recognized that "defendant was not formally arraigned on the superseding indictment," but held that he "had adequate knowledge of the pending charges and his failure to appear was knowing, voluntary and unjustified." In making that finding, the panel emphasized that at the June 9, 2003 conference defendant was on notice that the prosecutor would be seeking a superseding indictment, that the trial was scheduled for July 28, 2003, and that the trial would proceed even if he did not appear. In addition, the panel reasoned that although defendant was charged with six counts of aggravated assault in the superseding indictment that were not contained in the original burglary indictment, "the assaultive nature of the charges was inherent in the original indictment."

It reached that conclusion because the original indictment charging second-degree burglary alleged that defendant entered the residence " 'with the purpose to commit an offense within, and in the course of committing the offense purposely, knowingly or recklessly did inflict, attempt to inflict or threatened to inflict bodily injury on another.' " The language in the second-degree aggravated assault counts, however, alleged that defendant " 'purposely did attempt to cause serious bodily injury,' " thus requiring

proof not necessary to convict on second-degree burglary. The panel nevertheless deemed defendant to have sufficient advance notice of the aggravated assault charges based on the allegations in the burglary charge. Therefore, the panel maintained that the trial court did not abuse its discretion in trying defendant *in absentia.*

The Appellate Division also rejected defendant's argument that the trial court committed plain error in instructing the jury on burglary. It agreed that the court erred in charging the jury that " 'it's true with regard to [defendant and codefendant Germann] that they entered without license or privilege to be there.' " However, the panel was "convinced . . . that the jury would have rejected a 'license or privilege' contention as to defendant." Because co-defendant Fallas was convicted of burglary based on a proper jury charge, the panel deduced that a perfectly delivered charge would have been unavailing to defendant. Reviewing the jury instruction as a whole, the panel concluded that "the charge was not clearly capable of producing an unjust result."

The panel reversed defendant's two second-degree assault convictions because "the evidence was not sufficient to allow [those charges] to be submitted to the jury on a theory that defendant actually caused serious bodily injury." Moreover, the panel held that the court erroneously advised the jury to consider the third-degree aggravated assault charges only if it first found defendant not guilty of the second-degree aggravated assault charges, thus "infring[ing] on defendant's right to have each of these charges viewed separately and independently."

Last, the panel determined that the trial court did not properly follow the guidelines set forth in *State v. Pierce,* 188 *N.J.* 155, 169, 902 *A.*2d 1195 (2006), in imposing a seventeen-year extended term on the second-degree burglary charge and remanded for a new sentencing hearing.

We granted defendant's petition for certification. 194 *N.J.* 443, 945 *A.*2d 1287 (2008). We also granted the Attorney General's motion to participate as amicus curiae.

## II.

### A.

Defendant's petition for certification raises two distinct issues. First, we must decide whether the trial court erred in trying defendant *in absentia* on the new charges in the superseding indictment. Because the Appellate Division has reversed defendant's two second-degree aggravated assault convictions, and the State has not cross-petitioned for review of the reversal of those convictions, only the lesser-included simple assault and second-degree burglary convictions are before us.

Next, we must determine whether, by telling the jury that defendant was not permitted lawfully to enter Roy Piazza's apartment, the trial court improperly directed a verdict on an element of the burglary charge. Then, if the instruction was erroneous, we must decide whether the appropriate relief is the granting of a new trial.

### B.

Defendant argues that his trial *in absentia* on the new charges in the superseding indictment violated his due process and confrontation rights under the federal and state constitutions and violated the plain language of *Rule* 3:16(b). Defendant claims that he could not knowingly waive his right to be present at trial on the superseding indictment's new charges when he never received notice of those charges or their penal consequences as required by our court rules. He also insists that because he was never arraigned on the six aggravated assault charges, a trial should not have been scheduled or have proceeded in his absence. Last, defendant submits that the improper trial *in absentia* on the aggravated assault charges fatally prejudiced consideration on the burglary charge.

The State and amicus curiae Attorney General basically advance the same arguments in support of the Appellate Division's approval of the trial *in absentia*. They contend that the trial court did

not abuse its discretion in proceeding with the trial in defendant's absence because the prosecutor informed defendant of his intent to pursue a superseding indictment and because defendant was advised in court of the upcoming trial date. The State emphasizes that the original indictment provided defendant "with sufficient knowledge of the charges pertaining to the superseding indict-ment" and that "the assaultive nature of the charges [in the new indictment] was inherent in the original indictment."

The State points out that there is nothing in the record to contradict the trial court's finding that defendant knew of the superseding indictment, that is, defendant never filed a certifica-tion denying that he had knowledge of the new indictment or the penal consequences flowing from that indictment. To the extent that defendant had a right to a formal arraignment on the superseding indictment, the State and Attorney General maintain that defendant knowingly and voluntarily waived that right by absconding after he received notice in court of the trial date. Thus, they conclude that the trial proceeded in compliance with *Rule* 3:16(b) and that defendant received all the process due under law.

### III.

#### A.

The right of a person accused of a crime to be present at his or her trial is among the most fundamental of constitutional rights. That right finds its source in the federal and state constitutional right of a criminal defendant "to be confronted with the witnesses against him," *U.S. Const.* amend. VI; *N.J. Const.* art. I, ¶ 10; *see Illinois v. Allen,* 397 *U.S.,* 337, 338, 90 *S.Ct.* 1057, 1058, 25 *L.Ed.*2d 353, 356 (1970); *State v. Luna,* 193 *N.J.* 202, 209–10, 936 *A.*2d 957 (2007), and in the right to due process of law,[4]

---

[4] Although *Luna* recognized the Fourteenth Amendment Due Process Clause as one basis for the right of presence, our State Constitution's due process guaran-

*U.S. Const.* amend. XIV; *N.J. Const.* art. I, ¶ 1; *see Luna, supra,* 193 *N.J.* at 209, 936 *A.*2d 957.

Generally, a criminal defendant has the "right to be present in the courtroom at every stage of his trial." *Allen, supra,* 397 *U.S.* at 338, 90 *S.Ct.* at 1058, 25 *L.Ed.*2d at 356. In appropriate circumstances, the right to be present at one's criminal trial, like other constitutional rights, can be waived. In *Diaz v. United States,* the United States Supreme Court declared that if a defendant in a non-capital case "voluntarily absents himself" after the commencement of the trial, his conduct "operates as a waiver of his right to be present," and consequently the trial may proceed "as if he were" there. 223 *U.S.* 442, 455, 32 *S.Ct.* 250, 254, 56 *L.Ed.* 500, 505 (1912). The holding in *Diaz* was later codified in *Federal Rule of Criminal Procedure* 43. In *Crosby v. United States,* the United States Supreme Court declined to extend the rationale of *Diaz,* determining that "a straightforward interpretation [of *Federal Rule of Criminal Procedure* 43] prohibits the trial in *absentia* of a defendant who is not present at the beginning of trial." [5] 506 *U.S.* 255, 262, 113 *S.Ct.* 748, 753, 122 *L.Ed.*2d 25, 33

tee is another source of that right. Article I, Paragraph 1 of our State Constitution provides that every person possesses the "unalienable rights" to enjoy life, liberty, and property, and to pursue happiness. We have construed this expansive language to embrace the fundamental guarantee of due process. *See Jamgochian v. N.J. State Parole Bd.,* 196 *N.J.* 222, 239, 952 *A.*2d 1060 (2008).

[5] When *Crosby* was decided, *Federal Rule of Criminal Procedure* 43 provided in relevant part:

"(a) The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.

(b) The further progress of the trial to and including the return of the verdict shall not be prevented and the defendant shall be considered to have waived the right to be present whenever a defendant, initially present, (1) *is voluntarily absent after the trial has commenced (whether or not the defendant has been informed by the court of the obligation to remain during the trial)* ...."

(1993). In *Crosby*, the defendant, who had been arraigned on charges of mail fraud, failed to appear at a trial involving multiple defendants. *Id.* at 256, 113 *S.Ct.* at 750, 122 *L.Ed.*2d at 29. Because of its narrow reading of *Federal Rule of Criminal Procedure* 43, the Court did not "reach Crosby's claim that his trial in *absentia* was also prohibited by the Constitution." *Id.* at 262, 113 *S.Ct.* at 753, 122 *L.Ed.*2d at 33.

Three years before *Crosby*, this Court in *State v. Hudson*, 119 *N.J.* 165, 574 *A.*2d 434 (1990), took a different approach in construing *Rule* 3:16, New Jersey's analog to *Federal Rule of Criminal Procedure* 43. At the time, *Rule* 3:16, like the federal rule, provided that " 'the defendant's voluntary absence after trial has commenced in his presence shall not prevent its continuing to and including the return of the verdict.' " *Hudson, supra,* 119 *N.J.* at 167, 574 *A.*2d 434. In *Hudson,* the two defendants took flight from the courthouse shortly before jury selection was to begin in their trial. *Id.* at 168–70, 574 *A.*2d 434. The trial proceeded in their absence, and the jury found them guilty of various offenses. *Id.* at 170, 574 *A.*2d 434. The Appellate Division vacated the defendants' convictions on the ground that the trial was not in compliance with *Rule* 3:16. *Id.* at 167, 574 *A.*2d 434.

Despite the "plain meaning" of *Rule* 3:16, we reversed because we could not see a "principled reason to distinguish 'between the misconduct of a defendant who deliberately leaves the courtroom shortly after the trial begins and that of a defendant who does so after he has been told that the trial is about to begin.' " *Id.* at 181, 574 *A.*2d 434 (citation omitted). We held that as long as a defendant has "received adequate notice of the date, time, and place of trial, and of the right to be present," and has been informed of the "consequences of the failure to appear" at trial, "a defendant's knowing, voluntary, and unjustified absence before or

[*Crosby v. United States*, 506 *U.S.* 255, 258, 113 *S.Ct.* 748, 751, 122 *L.Ed.*2d 25, 30 (1993) (emphasis added).]

after trial has commenced does not prevent trial from proceeding *in absentia.*" *Id.* at 179–80, 182, 574 A.2d 434. We emphasized, however, that "[a]dequate notice to the defendant is an essential element of a knowing waiver of the right to attend trial." *Id.* at 182, 574 A.2d 434.

As a result of *Hudson*, Rule 3:16 was amended to eliminate the distinction between those defendants who knowingly and voluntarily absent themselves after the trial begins and those who do so before it begins. *See State v. Finklea*, 147 *N.J.* 211, 221, 686 A.2d 322 (1996). We suggested in *Hudson* that trial courts should inform a "defendant at the arraignment of the right to be present at trial and the consequences of the failure to appear." *Hudson, supra*, 119 *N.J.* at 182, 574 A.2d 434.

In light of the history and principles underlying the right of presence, we now turn to the current version of *Rule* 3:16, which is critical to our discussion of the issues before us.

### B.

■ *Rule* 3:16(b) in relevant part provides that:

The defendant shall be present at every stage of the trial, including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, unless otherwise provided by Rule. Nothing in this Rule, however, shall prevent a defendant from waiving the right to be present at trial. A waiver may be found either from *(a) the defendant's express written or oral waiver placed on the record, or (b) the defendant's conduct evidencing a knowing, voluntary, and unjustified absence after (1) the defendant has received actual notice in court or has signed a written acknowledgment of the trial date, or (2) trial has commenced in defendant's presence.*

[ (Emphasis added).]

It is clear that "[o]nce a defendant has been given actual notice of a scheduled trial date, nonappearance on the scheduled or adjourned trial date is deemed a waiver of the right to be present during the trial absent a showing of justification." *Luna, supra*, 193 *N.J.* at 210–11, 936 A.2d 957 (citation and internal quotation marks omitted). That proposition, however, presupposes that the defendant has actual notice of the charges against him.

*Rule* 3:9–1(c) mandates that, within fifty days of the return of an indictment, an arraignment or status conference be conducted in open court where the "judge shall advise the defendant of the substance of the charge[s] and confirm that the defendant has reviewed with counsel the indictment and the discovery." At that time, the "defendant shall enter a plea to the charges." *R.* 3:9–1(c). Although *Rule* 3:16(b) allows for waiving one's right to be present at trial, it nowhere suggests that an arraignment can be waived or that a trial can proceed when the defendant does not have actual notice of the charges. Here, defendant was never arraigned on the superseding indictment.

A defendant's knowledge that the prosecutor intended to seek additional charges is not a substitute for a defendant's right to receive and review the indictment. *See R.* 3:9–1(c). That the prosecutor intended to go before the grand jury to seek additional charges is not a guarantee that an indictment would be returned. "The grand jury is a judicial, investigative body"-"an arm of the court, not a law enforcement agency or an alter ego of the prosecutor's office." *In re Grand Jury Appearance Request by Loigman,* 183 *N.J.* 133, 141, 870 *A.*2d 249 (2005). Because the grand jury is not "a rubber stamp of the prosecutor's office," *State v. Hogan,* 144 *N.J.* 216, 236, 676 *A.*2d 533 (1996), we cannot presume that the prosecutor's announcement that he would re-present the case to the grand jury was tantamount to an arraignment on charges yet to be returned. The bottom line is that defendant was not advised in court "of the substance of the charge[s]" in the superseding indictment, as required by *Rule* 3:9–1(c), before he was tried on those charges.

It also bears mentioning that the elements of aggravated assault are different from those of second-degree burglary. Serious bodily injury, an element of second-degree aggravated assault, *N.J.S.A.* 2C:12–1(b)(1), is not an element of second-degree burglary, *N.J.S.A.* 2C:18–2. Thus, second-degree burglary and second-degree aggravated assault are distinct offenses. Indeed, the

aggravated assault convictions were made to run consecutive to the burglary conviction.

As discussed earlier, the right of the accused to be present at trial is of constitutional magnitude. We must not only construe *Rule* 3:16(b) within the bounds of the language of the rule but also within the bounds of the Federal Constitution. We are guided by the doctrine that, whenever possible, we should avoid construing rules and statutes in a way that places in doubt their constitutionality. *State v. Johnson,* 166 *N.J.* 523, 540, 766 *A.*2d 1126 (2001) (recognizing doctrine of " 'constitutional doubt' " that commands courts to " 'seek to avoid a statutory interpretation that might give rise to serious constitutional questions' " except when " 'compelled to do otherwise' " (quoting *Silverman v. Berkson,* 141 *N.J.* 412, 416, 661 *A.*2d 1266 (1995))).

█ We therefore hold that before a court can find that a "defendant's conduct evidenc[es] a knowing, voluntary, and unjustified absence" from trial under *Rule* 3:16(b), a defendant first must receive actual notice of the charges contained in the indictment at an arraignment or some other court proceeding.[6] To satisfy the procedural prerequisites for conducting a trial *in absentia* pursuant to *Rule* 3:16(b), only after an indictment is returned and a defendant is arraigned on the charges may a court advise a defendant that he will be tried on a date certain or date thereafter.

## C.

█ In this case, according to the trial court, at the June 9, 2003 status conference, the prosecutor told defense counsel that he intended to seek a superseding indictment that would include "an additional count of aggravated assault with regard to the use of a

---

[6] We need not determine in this case whether there might be some circumstance in which a defendant may—without appearing in court—expressly waive his presence at an arraignment, acknowledge an understanding of the charges brought against him, and enter a plea to the charges.

deadly weapon." The superseding indictment, which was returned two days later, alleged six counts of aggravated assault not contained in the original indictment. Defendant was never arraigned on those charges in accordance with *Rule* 3:9–1(c). His failure to appear in court after the June 9 conference did not constitute a waiver of the right to receive actual notice of the charges brought against him. Quite simply, without an arraignment first, defendant could not be tried on the new charges alleged in the superseding indictment.

Accordingly, we are compelled to reverse the simple assault conviction, which the jury found as a lesser-included offense of aggravated assault. As mentioned earlier, for other reasons, the Appellate Division reversed the two aggravated assault convictions arising from the superseding indictment.

Last, we note that defendant was arraigned on the second-degree burglary charge in the original indictment and was issued appropriate warnings that the trial would proceed even if he failed to appear. The burglary charges against defendant in the initial and superseding indictment were identical. In general, we see no reason that would have barred the State from proceeding to trial on the second-degree burglary charge after defendant took flight. Defendant, however, contends that although a trial in *absentia* on the burglary charge alone may have been permissible, he was prejudiced because that charge was joined with the six new aggravated assault charges.

That issue need not be decided because the trial court's charge to the jury on second-degree burglary was so fatally flawed that we are constrained to reverse the burglary conviction as well.

## IV.

Before turning to those portions of the court's charge to the jury at issue, we first must review the relevant sections of second-degree burglary. *N.J.S.A.* 2C:18–2 provides that a person is guilty of third-degree burglary if, with the "purpose to commit an offense," he enters a "structure," including a building or

residence, when he is not licensed or privileged to do so. Burglary is elevated to a second-degree crime if the person "in the course of committing the offense ... [p]urposely, knowingly or recklessly inflicts, attempts to inflict or threatens to inflict bodily injury on anyone." *N.J.S.A.* 2C:18–2(b)(1). The State is required to prove each element of the offense beyond a reasonable doubt. *See N.J.S.A.* 2C:1–13(a); *State v. Denofa,* 187 *N.J.* 24, 38, 898 *A.*2d 523 (2006).

The question is whether the court, in its instructions on the law, directed a verdict on an essential element of burglary by relieving the State of its obligation of proving that defendant entered Roy Piazza's residence without being licensed or privileged to do so. *See N.J.S.A.* 2C:18–2(a)(2). All three defense counsel in this case argued in opening and summation that when Piazza crudely spoke with co-defendant Fallas's parents at their home, he invited Fallas, and by extension defendant and co-defendant Germann, to visit him at his apartment for a talk. Indeed, defendant's counsel contended that what occurred in Piazza's apartment was a consensual fight. Whether that defense had any merit was for the jury to decide.

The court correctly instructed the jury on the elements of burglary. However, the court also charged the jury that

[t]o convict defendant Henry Fallas of the crime of burglary, you must find not only entry with the purpose to commit an offense, but also that the actor—in this case, Mr. Fallas—was not licensed or privileged to be there, to enter Mr. Piazza's apartment. And that's an element of burglary with regard to all of the defendants, but I—*and it's true with regard to [defendant and co-defendant Germann] that they entered without license or privilege to be there.* But there is some evidence here that Mr. Fallas may have—it could be inferred that he had license to be there or some type of implied or expressed invitation, whatever you may find from that testimony or evidence if you believe it to be true.

[ (Emphasis added).]

That instruction specifically advised the jury that, in the cases of defendant and co-defendant Germann, both of whom were being tried *in absentia,* one element of burglary had been proven—that "they [had] entered [Piazza's apartment] without license or privilege." The court reinforced that mistake by explaining—without

any mention of defendant or Germann—that if "Fallas entered the apartment of Roy Piazza at [Piazza's] implied or expressed invitation ... then it would not matter what his intent was at the time of his entry, as he could not be convicted of the crime of burglary." Defendant did not object to the court's charge.

 The prosecution bears the constitutional burden of proving each element of a crime beyond a reasonable doubt. *In re Winship*, 397 *U.S.* 358, 364, 90 *S.Ct.* 1068, 1072–73, 25 *L.Ed.*2d 368, 375 (1970); *Denofa, supra*, 187 *N.J.* at 38, 898 *A.*2d 523. "Integral to [the right of trial by jury] is a jury verdict free from untoward interference from any source, including the court." *State v. Collier*, 90 *N.J.* 117, 122, 447 *A.*2d 168 (1982). For that reason, "no matter how compelling the evidence, a trial court may not direct a verdict against a defendant in a criminal case." *Ibid.*; *see also State v. Vick*, 117 *N.J.* 288, 291–93, 566 *A.*2d 531 (1989) (reversing verdict because court's incorrect instruction amounted to directed verdict on essential element of gun charge); *State v. Ragland*, 105 *N.J.* 189, 202, 519 *A.*2d 1361 (1986) ("[T]he New Jersey cases require ... that there be no directed verdict in a criminal case."). "A directed verdict results when the court instructs the jury to find the defendant guilty of a particular charge...." *Ragland, supra*, 105 *N.J.* at 202, 519 *A.*2d 1361.

 We are compelled to conclude that the court's instructions in this case directed the jury to find that defendant was not licensed or privileged to enter Piazza's apartment. *See N.J.S.A.* 2C:18–2(a)(1). Regardless of how seemingly overwhelming the proofs were against defendant on that issue, it was for the jury, not the judge, to decide. *See Collier, supra*, 90 *N.J.* at 122, 447 *A.*2d 168. Additionally, we do not find that the court's re-charge on the elements of burglary—in response to a jury request—ameliorated its earlier flawed instruction.

 Defense counsel did not object to the court's charge, and therefore this issue comes before us as plain error. *R.* 2:10–2 ("[An] appellate court may, in the interests of justice, notice plain error not brought to the attention of the trial [court]....").

"Because proper jury instructions are essential to a fair trial, erroneous instructions on material points are presumed to possess the capacity to unfairly prejudice the defendant." *State v. Bunch,* 180 *N.J.* 534, 541–42, 853 *A.*2d 238 (2004) (citation and internal quotation marks omitted). We doubt that directing a verdict on an element of an offense can ever be harmless. *See State v. Torres,* 183 *N.J.* 554, 564, 874 *A.*2d 1084 (2005). Here, the error was of such constitutional magnitude that it undermined the very integrity of the trial, *see Collier, supra,* 90 *N.J.* at 122, 447 *A.*2d 168, and thus was "clearly capable of producing an unjust result," *Bunch, supra,* 180 *N.J.* at 541, 853 *A.*2d 238 (citation and internal quotation marks omitted); *R.* 2:10-2. We therefore reverse the second-degree burglary conviction and remand for a new trial.

## V.

For the reasons given, defendant's simple assault and second-degree burglary convictions must be vacated, and therefore we reverse the judgment of the Appellate Division. We remand to the Law Division for proceedings consistent with this opinion.

Justice RIVERA–SOTO, dissenting.

On June 9, 2003, defendant Angelo A. Grenci appeared at a pretrial conference concerning a then pending indictment in which he was charged with one count of second-degree burglary, in violation of *N.J.S.A.* 2C:18-2. During a later motion for a new trial, the trial court found as a fact that, at the June 9, 2003 pretrial conference,

[i]t's not disputed by [defendant] and the Defense that [defendant] knew that the superseding indictment was coming. . . .

[T]he assistant prosecutor . . . gave notice to defense counsel that [the State] would be seeking a superseding indictment which would be returned on June 11th, two days hence . . . and that the superseding indictment would charge an additional count of burglary, which is the same as the existing count of burglary, second-degree, and additional counts of aggravated assault with regard to the use of a deadly weapon.

> It was on that June 9th date, after this information was disclosed to the defendant through his counsel, that new *Hudson* warnings were given, the Court set a preemptory trial date of July 28th, 2003. So we're talking about actual notice.

The *Hudson* warnings to which the trial court referred were: that trial would proceed on July 28, 2003 or any rescheduled trial date; that if defendant failed to appear, the trial would proceed in his absence; and that defendant would be bound by the jury's verdict. *See State v. Hudson,* 119 *N.J.* 165, 183, 574 *A.*2d 434 (1990).

As the assistant prosecutor represented to the trial court and to defendant and his counsel, on June 11, 2003, the State again appeared before the Hudson County grand jury, and the grand jury returned a superseding indictment, recharging defendant with one count of second-degree burglary, in violation of *N.J.S.A.* 2C:18–2, and also charging defendant with three counts of second-degree aggravated assault, in violation of *N.J.S.A.* 2C:12–1(b)(1), and three counts of third-degree aggravated assault, in violation of *N.J.S.A.* 2C:12–1(b)(2). Two days later, on June 13, 2003, defendant's counsel mailed a copy of that superseding indictment to defendant; defendant made no showing that he did not receive that mailing. Thirteen days later, on June 26, 2003, the prosecutor mailed to defendant's counsel another copy of the superseding indictment, accompanied by additional discovery materials; on July 2, 2003, defendant's counsel mailed that package to defendant and, again, no showing has been made that defendant did not receive that package. Defendant then fled to Mexico and failed to appear at the July 28, 2003 trial date. It is against that factual backdrop that defendant's claims attacking his trial in absentia must be gauged.

In evaluating defendant's claim that his right to be present at trial was abridged, the Appellate Division acknowledged that "[t]he defendant's right to be present at trial is guaranteed to him under the Confrontation Clause of the Sixth Amendment of the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution." It further noted that, "[h]owever, a trial may proceed *in absentia* following the finding of a waiver, which is

grounded in the principles set forth in *Hudson, supra,* 119 *N.J.* at 182, 574 *A.*2d 434 and *Rule* 3:16(b)." It explained that

a defendant cannot be tried *in absentia* if the trial date is accelerated to a date prior to the original trial date and that "a defendant cannot be tried *in absentia* because he does not respond on short notice to a call from his attorney's office to report prior to the date he was told to do so by the judge."

[ (quoting *State v. Mahone,* 297 *N.J.Super.* 524, 528, 688 *A.*2d 658 (App.Div.), *aff'd,* 152 *N.J.* 44, 702 *A.*2d 1286 (1997)).]

Noting that "[t]here is no reported case applying this body of law to the return of a superseding indictment, charging several more serious offenses, returned after a defendant was last given *Hudson* warnings by the judge[,]" the panel reviewed defendant's interactions with the Court and his counsel and reasoned that "although defendant was not formally arraigned on the superseding indictment, he was provided with adequate notice of the superseding indictment such that his decision not to appear for trial constituted a knowing waiver." It therefore concluded that "defendant had adequate knowledge of the pending charges and his failure to appear was knowing, voluntary and unjustified" (citing *R.* 3:16(b)). It also rejected defendant's constitutional claims, stating that "[b]ecause we are convinced that defendant was informed of the charges against him, we are satisfied he was provided with the constitutional guarantee of due process" and that "defendant was not subjected to 'oppression, harassment, or egregious deprivation' by not having been informed of the details of the indictment in a formal arraignment" (quoting *State v. Reldan,* 373 *N.J.Super.* 396, 406–07, 861 *A.*2d 860 (App.Div.2004), *certif. denied,* 182 *N.J.* 628, 868 *A.*2d 1031 (2005)).

Summing up, the Appellate Division's logic stripped bare defendant's protestations:

To permit defendant to receive a new trial in light of his knowing, voluntary, and unjustified absence would frustrate the ends of justice. Defendant's voluntary absence placed him in the position to claim that he had not been informed of the superseding indictment and the subsequent charges that followed, resulting in a waiver that was not "knowing." "A defendant may not 'take advantage of his own wrong' and turn the proceedings into a 'solemn farce' by absenting himself from his own trial and thereby frustrate the legal process of justice." *State v. Givens,* 353 *N.J.Super.* 280, 285, 802 *A.*2d 563 (App.Div.2002) (quoting *Diaz v. United States,*

223 *U.S.* 442, 458[,] 32 *S.Ct.* 250, 255[,] 56 *L.Ed.* 500, 506 (1912)). Granting defendant's motion for a new trial would conflict with the public interest in the orderly administration of justice. We are convinced defendant's motion for a new trial on the basis of the lack of a knowing waiver of the right to be present at trial was properly denied by the trial court.

Finally, the panel succinctly rejected defendant's attack on one isolated sentence in the trial court's instructions to the jury in respect of the second-degree burglary charge. It noted that, in the aggregate, "the court made clear to the jury that in order for the jury to find defendant guilty of burglary it must find beyond a reasonable doubt that defendant entered the structure ... without permission and without being privileged or licensed to do so." It correctly acknowledged its limited role, explaining that a "court must review the single unobjected to sentence in the court's jury instruction based on the 'plain error' standard of review" (citing *R.* 2:10–2), and announced itself "satisfied after reviewing the court's jury instruction *as a whole* that the charge was not clearly capable of producing an unjust result and thus did not constitute plain error" (emphasis supplied).

I cannot improve on the Appellate Division's logic, reasoning or conclusions in respect of the two issues raised in defendant's petition for certification. Therefore, I would affirm in all respects the judgment of the Appellate Division, substantially for the reasons it set forth. Because the majority reaches a contrary result, I respectfully dissent.

*For reversal and remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE AND HOENS—6.

*For affirmance*—Justice RIVERA–SOTO—1.