**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2333-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

LUIS A. VIALIZ, a/k/a/
LUIS VIALIZ, LUIS VIALEZ,
LOUIS A. VIALIZ, PONCHO
MIALIZ, and LUIS A. VIALEZ,

    Defendant-Appellant.

_____

Argued March 1, 2022 – Decided August 25, 2022

Before Judges Fisher, DeAlmeida and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 18-12-1582.

Kevin S. Finckenauer, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Kevin S. Finckenauer, of counsel and on the briefs).

Carey J. Huff, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent

(Lori Linskey, Acting Monmouth County Prosecutor, attorney; Carey J. Huff, of counsel and on the brief).

PER CURIAM

Defendant Luis A. Vializ appeals from his conviction by a jury of four charges arising from him possessing a stolen bicycle, breaking a padlock on the bicycle a month later, and swinging a hammer at the bicycle's owner. He also appeals the nineteen-year prison sentence he received for those convictions. We direct entry of a judgment of acquittal on the count of the indictment charging defendant with second-degree witness retaliation, N.J.S.A. 2C:28-5(b), reverse the trial court order denying his motion to suppress statements made during his custodial interrogation, vacate his remaining convictions, and remand for further proceedings.

I.

The following facts are reflected in the trial testimony. A.S. was sixty-three-years old at the times relevant to this appeal. He has the functional capacity of a seven-year-old due to neurological and cognitive limitations. Detective Michael Bonanno, a thirty-year law enforcement veteran working for the Monmouth County Prosecutor's Office, is a long-time friend of A.S. and acts as his informal caretaker. A.S. uses a bicycle Bonanno purchased for him as his only means of transportation. The bicycle has distinctive characteristics,

including a large front basket, multiple reflectors, A.S.'s rubber band collection on the handlebars, and a big star hanging from its frame.

On September 18, 2018, A.S. called Bonanno and told him that his bicycle had been taken from his home in Neptune. Bonanno did not contact the local police department. He instead conducted an unsuccessful search of the neighborhood for the bicycle with A.S. The following morning, Bonanno, who had taken sick leave and was on his way to a pharmacy, happened upon defendant riding A.S.'s bicycle, which he recognized from its distinctive features. He contacted local police. Before they arrived, Bonanno, who was operating his personal vehicle, pulled alongside the bicycle, showed his badge, and stopped defendant. Once police arrived, defendant told the officers he purchased the bicycle in Asbury Park two weeks earlier. The officers arrested defendant and charged him with receiving stolen property. He was later released and ordered to have no contact with A.S.

On October 11, 2018, A.S. was at a combination liquor store and bar in Neptune where he frequently went to color, write letters, and pass time in the evenings. His bicycle, which had been recovered from defendant, was secured to a post outside the store with a chain and padlock. Defendant, a frequent customer of the establishment, entered the store to purchase beer. He was

carrying a white bag containing a hammer he used when working construction. His presence in the store, during which he had no interaction with A.S., but may have been looking at him, was captured on a video recording.

After defendant left the store, the owner heard a bang and told A.S. he should go outside to see if someone was trying to steal his bicycle. A.S. testified that he went outside and saw defendant hitting his bicycle with a hammer and the broken padlock on the ground. According to A.S., when he told defendant to stop, defendant swung the hammer at him, but did not make physical contact.

A.S. returned to the store and called Bonanno to tell him about his interaction with defendant. Bonanno came to the store and reviewed the video recording. He identified defendant, who A.S. denied knowing. A.S. did not give a formal statement to law enforcement that evening.

Bonanno reported the incident to Neptune police and gave the officers defendant's address from the prior arrest. The officers went to the nearby hotel where defendant was staying. Defendant allowed the officers to enter his room, where they recovered the hammer. They arrested defendant for criminal mischief and brought him to the police station.

An officer thereafter interrogated defendant. The interrogation, during which defendant made statements used against him at trial, was recorded by a

A-2333-19

video camera. While the State argues defendant waived his rights under Miranda v. Arizona, 384 U.S. 436 (1966), and state law, defendant argues he was too intoxicated to understand his rights and the alleged waiver was deficient. We will discuss the details of defendant's interrogation in greater detail below.

The officers released defendant after his interrogation. A.S. did not give a formal statement to law enforcement regarding either incident until the following morning. Police later charged defendant with additional offenses.

A grand jury indicted defendant, charging him with fourth-degree receiving stolen property, N.J.S.A. 2C:20-7(a), for the September 19, 2018 incident; and with respect to the October 11, 2018 incident: third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d); fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(a); third-degree aggravated assault with a deadly weapon, N.J.S.A. 2C:12-1(b)(2); and second-degree retaliation against a witness, N.J.S.A. 2C:28-5(b).[1]

Defendant moved to suppress the statements he made during his custodial interrogation. On July 5, 2019, the trial court issued a written decision and order denying the motion. The charges subsequently proceeded to trial.

---

[1] A count of the indictment charging defendant with fourth-degree possession of a prescription legend drug, N.J.S.A. 2C:35-10.5(e)(2), was dismissed before trial at the State's request.

After the parties rested, defendant moved pursuant to Rule 3:18-1 for a judgment of acquittal on all charges. With respect to the witness retaliation charge, defendant argued the State produced no evidence establishing he acted against A.S. because of his service as a witness, an element of the offense. In an oral opinion, the trial court denied the motion.

The jury acquitted defendant of aggravated assault with a deadly weapon and convicted him of fourth-degree receiving stolen property, third-degree possession of a weapon for an unlawful purpose, fourth-degree unlawful possession of a weapon, and second-degree retaliation against a witness.

After delivery of the verdict, defendant moved for a judgment of acquittal or a new trial on all convictions. The trial court issued an oral opinion denying the motion. Regarding the witness retaliation charge, the court concluded there was sufficient evidence on which a reasonable jury could find that defendant recognized the bicycle in front of the liquor store, knew that A.S. was the owner of the bicycle, and retaliated against A.S. by destroying the padlock for having caused him to be arrested on September 19, 2018.

The trial court granted the State's motion for an extended sentence on the witness retaliation conviction pursuant to N.J.S.A. 2C:44-3(a). The court sentenced defendant to an aggregate nineteen-year term of imprisonment, with

the controlling terms of fifteen years for witness retaliation and a consecutive four-year term for possession of a weapon for an unlawful purpose.

This appeal followed. Defendant makes the following arguments.

POINT I

MR. VIALIZ'S CONVICTION FOR SECOND-DEGREE WITNESS RETALIATION WITH FORCE MUST BE VACATED AND DISMISSED BECAUSE THE ALLEGED VICTIM WAS NEVER A WITNESS AGAINST MR. VIALIZ WITHIN THE MEANING OF THE STATUTE. ALTERNATIVELY, THE CONVICTION MUST BE REVERSED AND REMANDED FOR A NEW TRIAL DUE TO NUMEROUS ERRORS IN THE TRIAL COURT'S INSTRUCTIONS. (Partially raised below)

A.    Because A.S. Was Never a Witness Against Mr. Vializ Prior to this Trial, Mr. Vializ Cannot Have Been Convicted of Witness Retaliation Against A.S. (Not Raised Below)

B.    The Trial Court Erred in Instructing the Jury that Force Against Property was Sufficient for a Second-Degree Conviction for Witness Retaliation.

C.    It Was Reversible Error for the Trial Court to Instruct the Jury that Possession of a Weapon for an Unlawful Purpose Qualified as the Underlying Offense for Witness Retaliation.

POINT II

MR. VIALIZ'S MIRANDA WAIVER WAS NOT KNOWING, INTELLIGENT AND VOLUNTARY BECAUSE HE WAS SEVERELY INEBRIATED AND

7

FAILED TO EVINCE UNDERSTANDING OF THE OFFICER'S INSTRUCTIONS OR THE CONSEQUENCES OF HIS ACTIONS.

POINT III

NUMEROUS SENTENCING ERRORS RESULTED IN A SEVERELY EXCESSIVE SENTENCE. THE TRIAL COURT MISINTERPRETED THE WITNESS RETALIATION STATUTE, BELIEVING THE RETALIATION SENTENCE MUST BE CONSECUTIVE TO THE POSSESSION FOR AN UNLAWFUL PURPOSE SENTENCE WHEN IN FACT MERGER OF THOSE OFFENSES WAS REQUIRED. ADDITIONALLY, THE TRIAL COURT ABUSED ITS DISCRETION IN IMPOSING A FIFTEEN-YEAR TERM FOR WITNESS RETALIATION.

A.    Based on a Misunderstanding of N.J.S.A. 2C:28-5(e), the Trial Court Made the Possession of a Weapon for an Unlawful Purpose Sentence Consecutive to the Sentence for Witness Retaliation.

B.    The Conviction for Possession of a Weapon for an Unlawful Purpose Should Have Merged with the Witness Retaliation Sentence to Which It Related, or, at the Very Least, Have Been Made Concurrent to the Witness Retaliation Sentence.

C.    The Trial Court Abused its Discretion in Imposing a Fifteen-Year Sentence for Count Six.

D.    Mr. Vializ is Entitled to an Additional Day of Jail Credit for the Time He Spent at the Police Station Following his First Arrest After the October 11, 2018 Incident.

8

## II.

We begin with defendant's argument that the trial court erred when it denied his motion for a judgment of acquittal on the witness retaliation charge.

> On a motion for judgment of acquittal, the governing test is: whether the evidence viewed in its entirety, and giving the State the benefit of all of its favorable testimony and all of the favorable inferences which can reasonably be drawn therefrom, is such that a jury could properly find beyond a reasonable doubt that the defendant was guilty of the crime charged.
>
> [State v. D.A., 191 N.J. 158, 163 (2007).]

The propriety of the trial court's denial of defendant's motion for a judgment of acquittal depends on the meaning of N.J.S.A. 2C:28-5(b), which provides:

> Retaliation against witness or informant. A person commits an offense if he harms another by an unlawful act with purpose to retaliate for or on account of the service of another as a witness or informant. The offense is a crime of the second degree if the actor employs force or threat of force. Otherwise it is a crime of the third degree.
>
> [N.J.S.A. 2C:28-5(b).]

Defendant argues that A.S. never provided "service . . . as a witness" prior to October 11, 2018. Thus, he contends, the acts alleged in the indictment to have

taken place on that day cannot constitute retaliation against a witness under N.J.S.A. 2C:28-5(b). We agree.

Our obligation in ascertaining a statute's reach is to "discern and effectuate" the legislative intent. Murray v. Plainfield Rescue Squad, 210 N.J. 581, 592 (2012). The "best indicator of that intent is the statutory language," which must be given its "ordinary meaning and significance." DiProspero v. Penn, 183 N.J. 477, 492 (2005). Criminal statutes are to be strictly construed and reasonable ambiguities must be "decided in favor of anyone subjected to a criminal statute." D.A., 191 N.J. at 164; see also State v. Alexander, 136 N.J. 563, 573 (1994) (holding that ambiguity in a criminal statute "cannot inure to the benefit of the State").

Neither N.J.S.A. 2C:28-5(b) nor N.J.S.A. 2C:27-1, which contains definitions for chapters 27 through 30 of Title 2C, defines "service of another as a witness." Section (a) of N.J.S.A. 2C:28-5, however, provides insight into the legislature's intent when it enacted N.J.S.A. 2C:28-5(b).[2] That portion of the statute provides, in relevant part:

> Tampering. A person commits an offense if, believing that an official proceeding or investigation is pending or about to be instituted or has been instituted, he

---

[2] N.J.S.A. 2C:28-5(a) and (b) were enacted simultaneously. See L. 1978, c. 95. Subsequent amendments to the provisions are not material to our analysis.

knowingly engages in conduct which a reasonable person would believe would cause a witness or informant to:

(1)    Testify or inform falsely;

(2)    Withhold any testimony, information, document or thing;

(3)    Elude legal process summoning him to testify or supply evidence;

(4)    Absent himself from any proceeding or investigation to which he has been legally summoned; or

(5)    Otherwise obstruct, delay, prevent or impede an official proceeding or investigation.

This statute identifies what the legislature expects a witness to do. A witness's service relates to a pending or imminent official proceeding or investigation and includes testifying, informing, providing information, documents and things, complying with legal process, and appearing when summoned.

As of October 11, 2018, A.S. had not performed any of the functions of a witness identified in N.J.S.A. 2C:28-5(a), or which one would commonly associate with service as a witness. He had not reported the theft of his bicycle to the police. He did not testify at a hearing, participate in an investigation, or provide information, documents, or other evidence to law enforcement officers.

11

He was not subjected to legal process nor summoned to appear with respect to the then-pending charge against defendant.

While A.S. reported the theft of his bicycle to Bonanno, no reasonable jury could find that this constituted service as a witness. Bonanno was A.S.'s friend and informal guardian. Although he was employed by the prosecutor's office, he did not receive information from A.S. in his official capacity. In response to A.S.'s report, Bonanno did not contact local police, but undertook a search for the bicycle with A.S. on his personal time. It was not until the following day, when Bonanno was off duty and on a personal errand, that he spotted defendant on A.S.'s bicycle and called police. A.S. took no part in the subsequent investigation resulting in defendant's arrest on September 19, 2018.

A.S. was identified as the victim of the theft at defendant's pretrial detention hearing. This fact alone is insufficient to support a finding that A.S. served as a witness within the meaning of N.J.S.A. 2C:28-5(b). Defendant was aware it was Bonanno who spotted him on A.S.'s bicycle and contacted local police. The complaint issued by police charging defendant with receiving stolen property was based only on Bonanno's statements and not those of A.S.

While the evidence arguably may establish that defendant believed A.S. had reported the theft to police, his subjective belief that A.S. had served as a

witness is insufficient to satisfy the statute. In the model jury charge for witness retaliation, subjective intent is listed as a separate element from the victim's status as a witness. Model Jury Charges (Criminal), "Retaliation Against Witness or Informant (N.J.S.A. 2C:28-5)" (rev. May 4, 2009). The charge instructs the jury that the third element of the offense is "defendant's purpose in committing the unlawful act was to retaliate against" the witness. Ibid. The instructions continue, "The fourth element the State must prove beyond a reasonable doubt is that the retaliation was for or on account of the service of another as [a witness] [an informant]. The State alleges that the prior action for which it claims defendant was retaliating was _____." Ibid. (alterations in original). The victim's prior service as a witness is an objective fact and element of the offense that must be proven beyond a reasonable doubt.

This interpretation of N.J.S.A. 2C:28-5(b) comports with the Supreme Court's interpretation of N.J.S.A. 2C:20-7(a), the receiving stolen property statute. A defendant cannot be guilty of receiving stolen property unless the defendant has actually received stolen property. State v. Hodde, 181 N.J. 375, 383 (2004). A defendant's subjective belief that the property he is receiving is or may be stolen is a distinct element of the offense. Ibid. The Court explained,

> [a]n interpretation that requires the State to prove that
> the property actually is stolen also comports with

> common sense. If a person on the street or an attorney in a law office heard that a suspect is accused of receiving stolen goods, he or she would intuitively surmise that the good were indeed stolen. To hold otherwise would breed cynicism and disdain for the law, while reinforcing the incorrect perception that jurisprudence is bottomed on casuistry and craft.
>
> [Ibid.]

The same logic applies here. Defendant cannot be convicted of witness retaliation against someone who has not served as a witness. Because A.S. did not serve as a witness in the events that resulted in defendant's arrest for receiving stolen property, it was error for the trial court to deny defendant's motion for a judgment of acquittal on that count of the indictment.[3]

## III.

We turn to defendant's custodial interrogation. "An appellate court reviewing a motion to suppress evidence in a criminal case must uphold the factual findings underlying the trial court's decision, provided that those findings are 'supported by sufficient credible evidence in the record.'" State v.

---

[3] Defendant was not charged with witness tampering, N.J.S.A. 2C:28-5(a). We do not, therefore, opine on whether a jury might reasonably have found defendant's acts on October 11, 2018 were intended to intimidate A.S. into not testifying at the trial of the receiving stolen property charge. Nor do we address defendant's argument that because the jury acquitted him of aggravated assault with a deadly weapon, the State failed to prove the "force or threat of force" element of second-degree witness retaliation. N.J.S.A. 2C:28-5(b).

14

Boone, 232 N.J. 417, 425-26 (2017) (quoting State v. Scriven, 226 N.J. 20, 40 (2016)). Findings of fact are overturned "only if they are so clearly mistaken 'that the interests of justice demand intervention and correction.'" State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 162 (1964)). However, we owe no deference to conclusions of law made by the trial court, which are reviewed de novo. Boone, 232 N.J. at 426.

"The right against self-incrimination is guaranteed by the Fifth Amendment to the United States Constitution and this state's common law, now embodied in statute, N.J.S.A. 2A:84A-19, and evidence rule, N.J.R.E. 503." State v. S.S., 229 N.J. 360, 381-82 (2017) (quoting State v. Nyhammer, 197 N.J. 383, 399 (2009)). "Our law maintains 'an unyielding commitment to ensure the proper admissibility of confessions.'" State v. Sims, 250 N.J. 189, 211 (2022) (quoting State v. Vincenty, 237 N.J. 122, 132 (2019)).

"[A] knowing, intelligent, and voluntary waiver" of Miranda rights "is determined by the totality of the circumstances surrounding the custodial interrogation based on the fact-based assessments of the trial court." State v. A.M., 237 N.J. 384, 398 (2019); see also State v. Presha, 163 N.J. 304, 313 (2000). When making this analysis, courts consider the defendant's age, education, and intelligence, whether he or she was advised of his constitutional

rights, the length of the detention, whether the interrogation was repeated and prolonged, and whether physical punishment or mental exhaustion were involved. Nyhammer, 197 N.J. at 402. Because New Jersey provides greater protections than afforded under federal law, Vincenty, 237 N.J. at 132, "our review of police-obtained statements is 'searching and critical' to ensure protection of a defendant's constitutional rights." State v. Burney, 471 N.J. Super. 297, 314 (App. Div. 2022)(quoting State v. Patton, 362 N.J. Super. 16, 43 (App. Div. 2003)). "[F]or the statement to be admissible, the court must find it was voluntary beyond a reasonable doubt." Id. at 315.

Having carefully reviewed the record, including the video recording of defendant's interrogation, we conclude the trial court's finding that defendant knowingly, intelligently, and voluntarily waived his Miranda rights beyond a reasonable doubt is not supported by sufficient credible evidence. It is apparent from defendant's demeanor, sometimes non-sensical answers to the officer's questions, angry rants, and admission that he was drunk, that reasonable doubt exists as to whether defendant understood and waived his Miranda rights.

The following lengthy excerpt from the transcript of the officer purportedly informing defendant of his Miranda rights and obtaining his

16

knowing, intelligent, and voluntary waiver of those rights is illuminating. We have not made alterations to several passages that are grammatically incorrect:

> [OFFICER]: Hold on one second, let me see that, I'll read it to you.
>
> [DEFENDANT]: glasses, I need.
>
> [OFFICER]: I'll read it to you, and then if you don't understand any part, I know you don't have your glasses, but I'll read it to you. So obviously, I'm Officer Lay. I think I introduced myself before if you didn't have it. Can you just state your name for me?
>
> [DEFENDANT]: Oh ah Luis, Luis, Luis A. Viliaz. Ah, Luis ah l-u-i-s-v-i-a and ah v-i-a-l-i-z.
>
> [OFFICER]: Sure. Okay. Alright so this is the Neptune Township Police Department Miranda warning and waiver form.
>
> [DEFENDANT]: What?
>
> [OFFICER]: It's called a Miranda warning and wavier form. So what this is, is basically. I'll . . .
>
> [DEFENDANT]: I'm supposed to pour to you, ah . . .
>
> [OFFICER]: Well we're going to figure it out here okay. I want to speak to you about something a referenced event okay and for me to speak to you we have to go through this form and you have to agree to speak to me.
>
> [DEFENDANT]: Okay.

[OFFICER]: Okay so I'll go through the form like I said, if you have any questions at any point in time please stop me and I'll do my very best to answer them for you. Okay. Number one, it says you have the right to remain silent and refuse to answer any questions. You understand that?

[DEFENDANT]: Um hum.

[OFFICER]: Okay. If you do understand that I just need a yes or no. Do you understand sir?

[DEFENDANT]: Um hum.

[OFFICER]: Okay. Could I have you [just][4] initial here that you understand that?

[OFFICER]: This is number two. Anything you say may be used [against you] in a court of law.

[DEFENDANT]: Yes.

[OFFICER]: Do you understand that? Okay. Could I have you initial here on that second one that you understand that.

[OFFICER]: Okay. Number three. It says you have the right to consult with an attorney at any time and have him present before and during the questioning. Do you understand that? Just yes, or no. Okay could I have your initial there that you understand that?

[DEFENDANT]: I need a ride to go home.

---

[4] We have added in brackets words that are clearly intelligible on the video recording but not included in the written transcript provided to the court.

A-2333-19

[OFFICER]: Well yeah like, like I said [obviously] we have to figure some stuff out and if we can figure it out then I believe you will be going home at some point.

[DEFENDANT]: I'm, I'm dru . . . I'm drunk. I've been drinking. He bang on my door. I open the door. You think excuse me 'cuse me 'cuse me officer, . . . You think . . . would open my fuckin door for my house; of course I would have opened my fuckin door man. I swear to God man.

[OFFICER]: Hold on. Let's get through this. But, but, but you're going way ahead of me okay.

[DEFENDANT]: But, but, wait my would think about it. You think I do the crime so you open my fuckin door to my house? I don't give a fuckin shit man.

[OFFICER]: Hold on relax, relax, relax okay. Number four. If you cannot afford an attorney one will be provided if so desire prior to any questioning? Do you understand that?

[DEFENDANT]: Whaaaa?

[OFFICER]: That means that if you wanted an attorney and you couldn't afford one they would pay for one. Do you understand that?

[DEFENDANT]: [Yawning and coughing] Um hum.

[OFFICER]: Just I need a yea or no. Yes. Okay can I have you initial there that you understand that. I know this just a formality.

[DEFENDANT]: You don't know. No, no. I know everything where it come from. That fuckin that white

A-2333-19

boy sucker is working there. I be hit up for money. I don't even know I I I workin' you know I don't need no money what I mean. Get a fuckin job. Sucker white boy sucker man. That's the greatest fuckin joke; he's a fucking old man.

[OFFICER]: Hold on you can't say that though.

[DEFENDANT]: Haa, hey New York that's how fire everything, go for the head.

[OFFICER]: Relax for a second okay?

[DEFENDANT]: Um hm you're a moron fucking old man. Fucking on drugs!

[OFFICER]: Sir! Let me, let's get through this okay I want to try and get you out of here if I can.

[DEFENDANT]: Okay.

[OFFICER]: It says number five, the decision to waive these rights is not final and you may withdraw your waiver whenever you wish either before or during questioning. Do you understand that?

[DEFENDANT]: Um hum.

[OFFICER]: Yes or no? Okay. You're going to initial here if you understand that.

[DEFENDANT]: Um hum.

[OFFICER]: Okay. The last part here it says, I acknowledge I have been advised of each constitutional right as initialed above and that I understand these rights. So by signing here you're stating here that I read

you those five things and you understand all of them and that's correct?

[DEFENDANT]: Um, what do you mean?

[OFFICER]: It means that we went over all of these and you understand them.

[DEFENDANT]: Yeah.

[OFFICER]: So you do understand these things that we went over?

[DEFENDANT]: Yeah, what's gets me though. Everything usually gets you know . . .

[OFFICER]: It could it could be used in anyway. Like it says, it's to try to make sense of some things. Okay.

[DEFENDANT]: That's what happened. You know I don't. I want to tell you something . . . something.

[OFFICER]: Alright, let's just get through this last part.

[DEFENDANT]: No more for me. No more. Nice.

[OFFICER]: Let's just get to this part okay. It says having these rights in mind I wish to waive or give up these rights make a knowing and voluntary statement and answer questions. So if you want to speak with me if you want to try and you know give me your side and make sense of everything tonight. Then you would have to sign here and you want to speak to me?

[DEFENDANT]: I'm okay.

21

[OFFICER]: You want to speak to me correct?

[DEFENDANT]: I speak to you right now.

[OFFICER]: That's what I'm saying I was trying to reiterate what this says. So you understand after everything we went over that . . .

[DEFENDANT]: Yeah, yeah, I got, I got a father in . . . Puerto Rico.

[OFFICER]: Oh in law enforcement. Puerto Rico?

[DEFENDANT]: He served. Carry gun, in my [army a] Sergeant, I got father in police. You know and I know I made a mistake but ah I stop all that crazy shit because I don't need to live in. I get locked up for before burglary. I sell drug before thank God we get away [from that shit] before I see, because God give me chance to live here now. I don't mean to sell drugs for better way of work but it is good money.

[OFFICER]: That's good then.

[DEFENDANT]: Yeah [no] Yeah [that's what] I do. I sell I woke up people. I like my fairytale as hard working from drugs you know that you know. Do that crazy thing because everything you do is like good or bad.

[OFFICER]: Comes back to you right?

[DEFENDANT]: Yeah, yeah. God saved my life.

[OFFICER]: Let's. I want to get you out of here before it's too late. And . . . finally get you a ride home later on okay. So obviously like I told you I'm

22

> following up on an incident at Jumping Brooks Liquors that's in Neptune over there.

At that point, the interrogation began. During the questioning detailed above, defendant initialed and signed the <u>Miranda</u> rights waiver form.

For several reasons, the record does not support a finding beyond a reasonable doubt that defendant made a knowing, intelligent, and voluntary waiver of his <u>Miranda</u> rights. First, when defendant told the officer that he was drunk, it was incumbent on the officer to ask follow-up questions regarding defendant's alcohol consumption and mental state to ascertain whether he had the capacity to understand and waive his <u>Miranda</u> rights. Here, defendant stated that he was drunk immediately after the officer secured his initials with respect to item number three of the <u>Miranda</u> form. Rather than inquiring as to defendant's level of intoxication, the officer said "Hold on. Let's get through this . . . " and proceeded to the next item on the form. He made no further inquiry with respect to defendant's alcohol consumption or state of intoxication.

Second, defendant gave non-sensical answers to several of the officer's questions. The answers alone are concerning. When coupled with defendant's admission to being drunk, they raise considerable doubt about his ability to make a knowing, intelligent, and voluntary waiver of his <u>Miranda</u> rights.

A-2333-19

Third, the officer failed to elicit a clear verbal response from defendant to the several questions regarding whether he understood the rights the officer had read to him. Even though the officer repeatedly stated that he needed a "yes or no" response from defendant to his questions, he accepted "Um hum," other equivocal responses, or no verbal response before having defendant initial the waiver form.

Fourth, and critically, defendant never expressed an unequivocal waiver of his rights. The officer referred to obtaining the waiver as "just get[ting] through this last part," to which defendant responded, "No more for me. No more. Nice." When the officer followed-up with "[t]hen you would have to sign here and you want to speak to me?," defendant replied, "I'm okay." Apparently aware that these responses were ambiguous, the officer asked "You want to speak to me correct?" Defendant replied, "I speak to you right now." While this statement might, in different circumstances, constitute an unequivocal waiver of Miranda rights, the officer again followed-up with, "[t]hat's what I'm saying I was trying to reiterate what this says. So you understand after everything we went over that . . . ." Defendant interrupted the officer with a non-sensical description of his father's service as law enforcement officer in Puerto Rico, his

own history selling drugs, and what he described as his "fairytale as hard working from drugs . . . ."

Finally, the officer described defendant's understanding and waiver of his Miranda rights as a "formality."  Recently, in State v. O.D.A.-C., 250 N.J. 408 (2022), our Supreme Court held that an officer's repeated minimization of the significance of Miranda warnings, including by calling them a "formality," created reasonable doubt that a defendant's waiver was knowing, intelligent, and voluntary.  As the Court explained,

> [r]eferring to Miranda warnings as a "formality," for example, downplays their significance.  Doody v. Ryan, 649 F.3d 986, 1002-03 (9th Cir. 2011) (en banc). The label suggests that Miranda warnings are little more than a box on a bureaucratic checklist waiting to be checked off – and that is simply wrong.  Miranda warnings are a constitutional requirement meant to protect a person's rights under the Fifth Amendment; they are not a formality.  To describe them in that way minimizes their import and undermines "the very purpose of Miranda." Ross v. State, 45 So. 3d 403, 428-30 (Fla. 2010) (criticizing a reference to the warnings as "just a matter of procedure").
>
> [Id. at 422.]

While the Court declined to adopt a bright-line rule requiring suppression any time an officer makes an inappropriate comment undermining the import of

<u>Miranda</u> warnings, it held that improper police statements can be considered under the totality-of-the-circumstances test.  <u>Id.</u> at 423.

These factors, when considered in their totality, create a reasonable doubt as to whether defendant made a knowing, voluntary, and intelligent waiver of his <u>Miranda</u> rights.  It was error for the trial court to conclude otherwise.  Thus, the statements made by defendant during his custodial interrogation should have been suppressed.  Defendant's convictions, therefore, are vacated.

In light of our decision vacating defendant's convictions, we need not address his arguments with respect to sentencing.

Defendant's convictions are vacated and the matter is remanded for entry of a judgment of acquittal on the count of the indictment alleging second-degree witness retaliation and further proceedings consistent with this opinion on the remaining counts of the indictment.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2333-19